UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARIO CAVIN,

          Plaintiff,                 Case No. 4:20-cv-12470
                                     District Judge Shalina D. Kumar
v.                              Magistrate Judge Anthony P. Patti

BRANDON MCBRIDE,

          Defendant.
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART DEFENDANT'S MOTION TO DISMISS AND FOR SUMMARY JUDGMENT (ECF No. 20)

I.     **RECOMMENDATION**: The Court should **GRANT IN PART** and **DENY IN PART** Defendant's motion to dismiss and for summary judgment (ECF No. 20), and grant summary judgment on Count II of Plaintiff's amended complaint for failure to exhaust administrative remedies (ECF No. 10, PageID.61-62).

II.     **REPORT**

     **A.**     **Background**

          **1.**     **Factual Background**

Plaintiff Mario Cavin, a state prisoner proceeding *in forma pauperis* (ECF Nos. 2, 3), filed this action under 42 U.S.C. § 1983 on September 1, 2020, alleging retaliation in violation of the First Amendment, the Michigan Constitution, and the

Elliot-Larsen Civil Rights Act, against Defendant Brandon McBride (ECF No. 1).[1]

On April 9, 2021, Plaintiff filed a motion for leave to amend his complaint

asserting that while his original complaint was pending, Defendant engaged in

additional acts of retaliation he wished to add (ECF No. 9, PageID.54-55), along

with a proposed amended complaint (ECF No. 10), which the Court granted on

March 14, 2022 (ECF No. 16).  In his amended complaint, Plaintiff raises two

retaliation claims: Count I for Defendant's alleged conduct on February 29, 2020,

and Count II for Defendant's alleged conduct on October 6 and 8, 2020.  (ECF No.

10, PageID.61-62.)

### a.    Count I – February 29, 2020 claim

The underlying facts related to Plaintiff's first retaliation claim, as alleged in

his amended complaint, are as follows.  Throughout January 2020, while Plaintiff

was housed at Macomb Correctional Facility (MRF), Defendant, a correctional

officer, subjected Plaintiff to constant harassment.  (ECF No. 10, PageID.58, ¶ 5.)

Specifically, "[h]e would single [Plaintiff] out in a group of people for a 'random

shakedown', and would search [Plaintiff's] cell no less than three times a week.

Additionally, he made multiple comments about [Plaintiff's] weight and his

perceived sexual orientation."  (ECF No. 10, PageID.58, ¶ 5.)  After speaking with

---

[1] *See* www.michigan.gov/corrections, "Offender Search."  Plaintiff has another
case currently pending before this Court.  *See* 2:21-cv-12535-GAD-APP.

multiple supervisors about Defendant's behavior, Defendant subjected Plaintiff to another shakedown during which he said, "You thought snitching on me would help you?"  (ECF No. 10, PageID.58-59, ¶ 6.)

Then on or about February 15, 2020, Defendant stopped Plaintiff on his way back to Housing Unit 2 from his Chance for Life class, demanded a shakedown, and told Plaintiff to return to the school building.  (ECF No. 10, PageID.59, ¶ 7.) Plaintiff returned to the school and spoke with the officer in charge, who confirmed that he had permission to leave, and who called a sergeant at Plaintiff's request.  (ECF No. 10, PageID.59, ¶ 8.)  The sergeant stated that he would speak to Defendant to let him know that Plaintiff had permission to return to the housing unit.  (ECF No. 10, PageID.59, ¶ 9.)  But when Plaintiff did return, Defendant called him a snitch.  (ECF No. 10, PageID.59, ¶ 10.)  Despite fear of potential retaliation, Plaintiff filed a grievance (MRF-2002-226-17A) regarding the incident. (ECF No. 10, PageID.59, ¶ 10.)

The conflict between Plaintiff and Defendant continued on February 29, 2020, when Plaintiff attempted to return to the dayroom to retrieve his water bottle. (ECF No. 10, PageID.59, ¶ 11.)  Defendant yelled at Plaintiff not to enter, so he "stood on base and waved down someone in the dayroom to grab his bottle on their way out."  (ECF No. 10, PageID.59, ¶ 11.)  As he did this, Defendant approached him aggressively and said, "I'm sick of your fat ass.  Get the fuck off my base."

(ECF No. 10, PageID.59-60, ¶¶ 11-12.)  Plaintiff filed Grievance MRF-2003-295-17B regarding the incident.  (ECF No. 10, PageID.59-60, ¶ 12.)

Following the incident, Plaintiff received a misconduct from Defendant for disobeying a direct order.  (ECF No. 10, PageID.60, ¶ 3.)  "After explaining his history with [Defendant] to the Hearings Officer, [Plaintiff] was found guilty but only given two days sanctions."  (ECF No. 10, PageID.60, ¶ 14.)

In Count I of his amended complaint, Plaintiff claims that Defendant's February 29, 2020 conduct constitutes retaliation in violation of the First Amendment, Sections 2, 3, and 5 of the Michigan Constitution, and Michigan Civil Rights laws.  (ECF No. 10, PageID.61, ¶¶ 19-23.)  In so doing, he asserts that: (1) he engaged in protected conduct when he made verbal complaints to multiple supervisors and filed a grievance; (2) "[Defendant's] immediate (and prolonged) actions constitutes adverse actions against [him] which were designed to deter him from continuing to engage in protected conduct.  Specifically, excessive shakedowns, cell searches, and receiving false misconducts would deter a person of ordinary firmness."; and (3) Defendant's actions were motivated by his verbal complaints and grievances.  (ECF No. 10, PageID.61, ¶¶ 19-23.)

### b.  Count II – October 6 and 8, 2020 claim

When Plaintiff contracted COVID-19, he was moved out of Housing Unit 2 to Unit 3, "where he remained until he was erroneously returned to Unit 2 on

October 4, 2020."  (ECF No. 10, PageID.60, ¶ 15.)  Two days after his return, on

October 6, 2020, Defendant searched Plaintiff's cell and confiscated his JPS

player, stating, "What makes you think this time would be any different?"  (ECF

No. 10, PageID.60, ¶ 16.)

> Then:
>
> On October 8, 2020, [Plaintiff] was attempting to return to his job in
> Food Service (around 9:24am) when [Defendant] began screaming at
> him to "lock the fuck up" and to "get the fuck off [his] base."
> [Plaintiff] told [Defendant] to call C.O. Brill to verify that [he] was to
> return to work, but [Defendant] continued screaming and threatened to
> put [him] in the hole.  He then yelled, "You think I give a fuck about a
> grievance or that bitch ass lawsuit?"

(ECF No. 10, PageID.60, ¶ 17.)  Plaintiff spoke with supervisors about the incident

and was moved days later after someone reviewed the camera footage.  (ECF No.

10, PageID.60-61, ¶ 18.)

In Count II of his amended complaint, Plaintiff claims that Defendant's

October 6 and 8, 2020 actions were retaliatory, asserting that: (1) "he engaged in

protected conduct when he was in possession of his personal property on October

6, 2020, and attempted to return to his job assignment on October 8, 2020 as

required by his supervisors"; (2) Defendant's confiscation of his personal property

and threat to put him in segregation constitute adverse actions; and (3) Defendant's

actions were motivated by his previous grievances and pending litigation.  (ECF

No. 10, PageID.62, ¶¶ 24-27.)

### 2.     Instant Motion

On March 22, 2022, Defendant filed a motion to dismiss and for summary judgment, arguing entitlement to dismissal of Plaintiff's claims for failure to state a claim of retaliation under the First Amendment, and to exhaust his administrative remedies.  (ECF No. 20.)  Defendant does not address Plaintiff's state law claims of retaliation, but asserts that: (1) to the extent Plaintiff's claims are based on allegations of verbal abuse and harassment, those allegations are insufficient to sustain First Amendment retaliation claims; (2) neither of the two relevant grievances Plaintiff filed in February 2020 exhaust that claim; and (3) Plaintiff filed his proposed amended complaint to add the October claim before completion of the grievance process for that claim.  (ECF No. 20, PageID.99-113.)

Plaintiff filed his response in opposition on April 27, 2022, arguing that Defendant's alleged actions extended beyond simple verbal abuse and would deter a person of ordinary firmness from engaging in protected conduct, and that he adequately exhausted both claims.  (ECF No. 23, PageID.172-175.)  In his May 19, 2022 reply brief, Defendant mostly reiterates his arguments, but challenges Plaintiff's exhaustion of his claims on the additional ground that to the extent Plaintiff claims retaliatory misconduct, he failed to raise the issue during the misconduct hearing.  (ECF No. 24, PageID.179.)

## B.    Standards

Defendant labels his motion as both a motion to dismiss and for summary judgment, but only provides the summary judgment standard in his brief.  (ECF No. 20, PageID.98-99.)  Nevertheless, I provide both standards below.

### 1.    Fed. R. Civ. P. 12(b)(6)

When deciding a motion to dismiss under Rule 12(b)(6), the courts must "construe the complaint in the light most favorable to the plaintiff and accept all allegations as true."  *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (concluding that a plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action").  Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct."  *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013).  To make

7

this determination, a court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). Furthermore, the Court holds *pro se* complaints to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

### 2.    Fed. R. Civ. P. 56

Under Fed. R. Civ. P. 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the case under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004).

"The moving party has the initial burden of proving that no genuine issue of material fact exists . . . ." *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); *cf.* Fed. R. Civ. P. 56(e)(2) (providing that if a party "fails to properly address another party's assertion of fact," the court

8

may "consider the fact undisputed for purposes of the motion").  "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'"  *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The nonmoving party "must make an affirmative showing with proper evidence in order to defeat the motion."  *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009); *see also Lee v. Metro. Gov't of Nashville & Davidson Cty.*, 432 F. App'x 435, 441 (6th Cir. 2011) ("The nonmovant must . . . do more than simply show that there is some metaphysical doubt as to the material facts[.] . . . [T]here must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute.") (internal quotation marks and citations omitted).  In other words, summary judgment is appropriate when the motion "is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case[.] . . ."  *Stansberry*, 651 F.3d at 486 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

The fact that Plaintiff is *pro se* does not reduce his obligations under Rule 56.  Rather, "liberal treatment of *pro se* pleadings does not require lenient treatment of substantive law."  *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338,

344 (6th Cir. 2006).  In addition, "[o]nce a case has progressed to the summary

judgment stage, . . . 'the liberal pleading standards under *Swierkiewicz* [*v. Sorema,*

*N.A.*, 534 U.S. 506, 512-13 (2002)] and [the Federal Rules] are inapplicable.'"

*Tucker v. Union of Needletrades, Indus., & Textile Emp.*, 407 F.3d 784, 788 (6th

Cir. 2005) (quoting *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315

(11th Cir. 2004)).  The Sixth Circuit has made clear that, when opposing summary

judgment, a party cannot rely on allegations or denials in unsworn filings and that a

party's "status as a pro se litigant does not alter [this] duty on a summary judgment

motion." *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010);

*see also United States v. Brown*, 7 F. App'x 353, 354 (6th Cir. 2001) (affirming

grant of summary judgment against a *pro se* plaintiff because he "failed to present

any evidence to defeat the government's motion").

### C.     Discussion

#### 1.     The Court should decline to dismiss Plaintiff's complaint for failure to state claims of First Amendment retaliation

Defendant first asserts that the "Court should dismiss any claims arising out

of the alleged abusive language," because such allegations are insufficient to

sustain a claim of first amendment retaliation.  (ECF No. 20, PageID.102.)

"A retaliation claim essentially entails three elements: (1) the plaintiff

engaged in protected conduct; (2) an adverse action was taken against the plaintiff

that would deter a person of ordinary firmness from continuing to engage in that

conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

Defendant focuses his argument for dismissal on the second element, so I will do the same here. Not every adverse action is constitutionally cognizable. *Thaddeus-X*, 175 F.3d at 396. *See also Ingraham v. Wright*, 430 U.S. 651, 674 (1977) ("There is, of course, a de minimis level of imposition with which the Constitution is not concerned."). The Sixth Circuit has "adopt[ed] the standard . . . that an adverse action is one that would 'deter a person of ordinary firmness' from the exercise of the right at stake." *Thaddeus-X*, 175 F.3d at 396. Further, "'prisoners are expected to endure more than the average citizen,' *Siggers-El* [*v. Barlow*], 412 F.3d [693,] 701 [(6th Cir. 2005)], and so not every objectionable act directed at a prisoner constitutes adverse action sufficient to deter a person of ordinary firmness from engaging in protected activities." *Reynolds-Bey v. Harris*, 428 F. App'x 493, 503 (6th Cir. 2011). For example, "'the single search of a prison cubicle would not deter a person of ordinary firmness from pursuing constitutional grievances,'" *id*. at 503 (quoting *Tate v. Campbell*, 85 F. App'x 413, 417 (6th Cir. 2003)), nor would "[a] single shakedown, *unaccompanied by* excessive use of force, verbal threats, a *pattern* of previous questionable shakedowns *or other such factors*," *Reynolds-Bey*, 428 F. App'x at 503-04

11

(emphases added).  And, as stated in one of Defendant's cited cases (*see* ECF No.

20, PageID.102), "[a]n inmate has no right to be free from verbal abuse, *Ivey v.*

*Wilson*, 832 F.2d 950, 954-55 (6th Cir. 1987), and minor threats do not rise to the

level of a constitutional violation."  *Carney v. Craven*, 40 F. App'x 48, 50 (6th Cir.

2002).

Defendant makes little effort to consider the context of Plaintiff's claims, or

to actually apply the law to the specific factual allegations in Plaintiff's amended

complaint, only cursorily arguing that to the extent Plaintiff's claims arise out of

abusive language, they should be dismissed.  In fact, Defendant exhibits confusion

regarding the claims.  For example, the heading for Defendant's argument on this

issue references allegations of racial slurs (ECF No. 20, PageID.99), but no such

allegations exist in Plaintiff's amended complaint, as he points out in his response

brief (ECF No. 23, PageID.172).  Further, Defendant provides what appears to be

over a page of "canned" briefing related to supervisory liability, which is not at

issue here.  (ECF No. 20, PageID.100-101.)

While Defendant may be correct that the specific behavior Plaintiff alleges

occurred on February 29, 2020—Defendant aggressively yelling and attacking his

size— viewed alone, would likely not constitute an adverse action for purposes of

a retaliation claim, the analysis should not end there.  However, even if an arguably

close call, when considered in the context of Plaintiff's *additional* allegations—

12

Defendant's issuance of a misconduct, as well as shakedowns and verbal assaults, including calling Plaintiff a snitch and commenting on his weight and sexual orientation throughout January and February 2020 (ECF No. 10, PageID.58-59, ¶¶ 5-10)—which the Court must accept as true and construe in the light most favorable to Plaintiff, the Court should find that such behavior (the February 29 verbal abuse) is part of a larger pattern of previous "questionable" behavior and would, as a result, deter a person of ordinary firmness from engaging in protected conduct. *See Reynolds-Bey*, 428 F. App'x at 503-04. *See also Thomas v. Eby*, 481 F.3d 434, 441 (6th Cir. 2007) ("Because inmates convicted of major-misconduct charges lose their ability to accumulate disciplinary credits for that month, inmates of ordinary firmness would be more reluctant to engage in protected conduct that may lead to the retaliatory issuance of misconduct tickets.").

According to Plaintiff's allegations, the pattern of questionable conduct continued in October 2020, when Plaintiff was returned to Housing Unit 2, and both included and went beyond verbal abuse.  Specifically, Plaintiff alleges that Defendant searched his cell and confiscated property, screamed at him, and threatened to put him in the "hole" for filing grievances and this lawsuit.  (ECF No. 10, PageID.60-61, ¶¶ 15-18.)  Again, the Court should find that this alleged conduct, considered together and in conjunction with Defendant's earlier alleged conduct, would deter a person of ordinary firmness from continuing to engage in

13

the protected behavior.  *See Reynolds-Bey*, 428 F. App'x at 503 (threatening to

impose disciplinary sanctions may be an adverse action) (citing *Scott v. Churchill*,

377 F.3d 565, 571-72 (6th Cir. 2004)); *Williamson v. Woods*, No. 2:18-cv-141,

2018 WL 6177393, at *6 (W.D. Mich. Nov. 27, 2018) ("[T]he Court finds that

Plaintiff states a retaliation claim against Defendant Line for threatening to transfer

Plaintiff to the 'hole' in response to Plaintiff's grievances."); *Bell v. Johnson*, 308

F.3d 594, 604-05 (6th Cir. 2002) (reasoning that shakedown combined with

confiscation of property may deter a person of ordinary firmness).  Accordingly,

especially at this preliminary stage of the case, the Court should reject Defendant's

argument that Plaintiff failed to state a claim for First Amendment retaliation and

deny his motion on that basis.

### 2.    Exhaustion

Defendant also argues that he is entitled to summary judgment because

Plaintiff failed to exhaust either of his retaliation claims.  (ECF No. 20,

PageID.103-113; ECF No. 24, PageID.179-182.)

### a.    Exhaustion under the PLRA

Under the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e *et seq.*,

a prisoner may not bring an action "with respect to prison conditions under section

1983 of this title, or any other Federal law . . . until such administrative remedies

as are available are exhausted."  42 U.S.C. § 1997e(a).  Congress enacted the

provision to address the "outsized share" of prisoner litigation filings and to ensure that "the flood of nonmeritorious claims does not submerge and effectively preclude consideration of the allegations with merit." *Jones v. Bock*, 549 U.S. 199, 203-04 (2007).  Put another way, the purpose of § 1997e(a) is to "reduce the quantity and improve the quality of prisoner suits[.]" *Porter v. Nussle*, 534 U.S. 516, 524 (2002).  In addition, exhaustion "gives an agency an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court, and it discourages disregard of [the agency's] procedures." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006) (internal quotation marks and citation omitted).

"There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones*, 549 U.S. at 211.  The prison's grievance process determines when a prisoner has properly exhausted his or her claim. *Id.* at 218 ("The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.").  Thus, the PLRA requires not only exhaustion, but *proper* exhaustion. *See Woodford*, 548 U.S. at 92 (concluding that if a prisoner fails to file a procedurally proper grievance, he fails to satisfy the PLRA's exhaustion requirement).  "[P]roper exhaustion of administrative remedies . . . means using all

15

steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits.)" *Id.* at 90 (quotation marks and citation omitted). As long as the prison "clearly rejects a grievance for a reason explicitly set forth in the applicable grievance procedure, a subsequent § 1983 claim based on the grievance will be subject to dismissal for failure to properly exhaust." *Burnett v. Howard*, No. 2:09-CV-37, 2010 WL 1286256, at *1 (W.D. Mich. Mar. 30, 2010) (internal quotation marks and citation omitted). That said, a court "is not required to blindly accept the state's application of the procedural rule." *Reeves v. Salisbury*, No. 11-cv-11830, 2012 WL 3206399, at *5 (E.D. Mich. Jan. 30, 2012), report and recommendation adopted in part, rejected on other grounds, 2012 WL 3151594 (E.D. Mich. Aug. 2, 2012).

Finally, inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones*, 549 U.S. at 216. Instead, failure to exhaust administrative remedies is an affirmative defense under the PLRA. *Id.* at 212-13. As such, defendants bear the burden of proof on exhaustion. *Surles v. Andison*, 678 F.3d 452, 456 (6th Cir. 2012) ("A PLRA defendant bears the burden of proving that a PLRA plaintiff has not exhausted his administrative remedies.").

### b.    Grievance procedures at the MDOC

Pursuant to PD 03.02.130, dated March 18, 2019, the administrative remedies available at the MDOC are as follows. First, the inmate must attempt to

resolve the issues with the staff member involved within two business days of

becoming aware of a grievable issue.  (MDOC PD. 03.02.130, Exhibit 1 to

Defendant's MSJ, ECF No. 20-2, PageID.120, ¶ Q.)  If the issues are not resolved,

within five business days, the inmate may file a Step I grievance using the

appropriate form.  (ECF No. 20-2, PageID.120, ¶ Q.)  "Dates, times, places and

names of all those involved in the issue being grieved are to be included."  (ECF

No. 20-2, PageID.120, ¶ S.)  The inmate should receive a response at Step I within

fifteen business days of filing the grievance.  (ECF No. 20-2, PageID.121, ¶ Z.)

If the inmate is dissatisfied with the Step I disposition or does not receive a

response by ten business days after the due date, he or she may file a Step II

grievance using the appropriate form.  (ECF No. 20-2, PageID.122, ¶ DD.)  As

with Step I, the inmate should receive the Step II response within fifteen business

days.  (ECF No. 20-2, PageID.122, ¶¶ EE.)

Similarly, if the inmate is dissatisfied with the Step II response or does not

receive a response by ten business days after the due date, the inmate may file a

Step III grievance.  (ECF No. 20-2, PageID.123, ¶ HH.)  "To file a Step III

grievance, the grievant must send a completed Prisoner/Parolee Grievance Appeal

form (CSJ-247B) to the Grievance Section within ten business days after receiving

the Step II response or, if no response was received, within ten business days after

the date the response was due, including any extensions."  (ECF No. 20-2,

PageID.123, ¶¶ HH.)  The matter is fully exhausted after the disposition of the Step

III grievance.  *Surles*, 678 F.3d at 455 ("A grievant must undertake all steps of the

MDOC process for his grievance to be considered fully exhausted.").

### c.      Plaintiff's February 29, 2020 claim

The Court should find that Plaintiff exhausted his administrative remedies

for the February 29, 2020 claim.

As Defendant asserts (ECF No. 20, PageID.110-111) and Plaintiff does not

refute, Plaintiff filed two grievances addressing the February 2020 allegations in

his amended complaint.  In the first—MRF-20-02-0226-17A—with an incident

date of February 15, 2020, Plaintiff complained at Step I:

> On 2/15/20, I returned to the unit from my CFL Orientation.  CO
> McBride ordered me to the desk and demanded a shakedown.  He
> then asked where I came from and ordered me to go back.  I told him
> we were permitted to return.  He called CO Jones in the school to
> verify what I told him, then ordered me to return to the school.  At
> least three other prisoners entered the unit from the class and none
> were turned back.  When I returned to the school, I asked to see a
> sergeant.  The situation was explained and I was permitted to return to
> my unit.
>
>       Since his arrival in Unit 2, McBride has targeted me (and
> multiple others) to harass, intimidate or degrade.  He was also
> overheard by prisoner Ales #318527 discussing his plan to retaliate
> against me for contacting the sergeant.

(ECF No. 20-3, PageID.161.)

Defendant asserts that this grievance could not have exhausted Plaintiff's

first retaliation claim, because it alleged only that he intended to retaliate against

Plaintiff, and thus "was *the protected conduct* which formed the basis of his

retaliation claims."  (ECF No. 20, PageID.110-111.)  However, even assuming

without deciding that Defendant is correct, it is MRF-20-03-0295-17B which

directly addresses the events of February 29, 2020, and at Step I, Plaintiff

complained of retaliation, stating:

> On 2/29/20, C.O. McBride approached me on base in an aggressive and threatening manner while screaming at me to "get my fat ass off his base".  I told him to bring his volume down and watch how he spoke to me.  He then demanded my ID – which sat on the windowsill – and he snatched it while saying "I'm tired of this fat fuck".  He then mumbled "you think you can grieve me and do what you want?"  This entire exchange was witnessed by most of the unit because everything was being closed down.
>
> Not only is McBride deliberately retaliating against me, he is in violation of multiple laws and policies by using derogatory language, creating a disturbance, acting in a threatening manner, and subjecting me to mental and emotional abuse.

(ECF No. 20-3, PageID.156.)  Defendant's argument that this grievance cannot

exhaust Plaintiff's first retaliation claim because he complains only of abusive

language, fails for all of the reasons provided above.  Although this grievance does

complain of verbal abuse, stopping the analysis there ignores Plaintiff's broader

contextual allegations, which if accepted as true, display a pattern of "questionable

shakedowns or other such factors" – e.g., shakedowns and the issuance of a

misconduct ticket – including and beyond verbal abuse. *Reynolds-Bey*, 428 F.

App'x at 503-04.

The Court should also reject Defendant's argument, raised for the first time in his reply brief, that Plaintiff failed to exhaust administrative remedies to the extent he alleges retaliatory misconduct, because he failed to raise the issue of retaliation during his misconduct hearing.  (ECF No. 24, PageID.179.)  Arguments raised for the first time in a reply brief are generally considered waived.  *Frank v. U.S. Food & Drug Admin.*, 998 F.Supp.2d 596, 602 (E.D. Mich. 2014) (citing *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008)).  To accredit such arguments, after Plaintiff has already had his last word on the subject, would be inherently unfair.  Defendant is not entitled to dispositive relief on the basis of his tardy afterthought.

Accordingly, the Court should find that Defendant is not entitled to partial summary judgment on Plaintiff's first retaliation claim because he has not met his burden of establishing that Plaintiff failed to exhaust administrative remedies for that claim.

### d.    Plaintiff's October 6 and 8, 2020 claim

The Court should find that Plaintiff failed to exhaust administrative remedies for his second retaliation claim, and grant summary judgment on that basis.

Again, Plaintiff moved for leave to amend his complaint to add a second retaliation claim against Defendant, related to incidents which occurred after Plaintiff filed his original complaint.  (ECF No. 9, PageID.54-55.)  Generally, a

prisoner "may not exhaust his administrative remedies during the pendency of [a] federal suit." *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999) (citations omitted); *see also Woodford*, 548 U.S. at 95 ("A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction . . . ."). However, "the PLRA and Federal Rule of Civil Procedure 15 permit a plaintiff to amend his complaint to add claims that were exhausted after the commencement of the lawsuit, provided that the plaintiff's original complaint contained at least one fully exhausted claim." *Mattox v. Edelman*, 851 F.3d 583, 595 (6th Cir. 2017).

Both parties agree that the relevant grievance for Plaintiff's second retaliation claim is MRF-20-10-2299-17F.  Should the Court agree with my prior analysis, it should reject Defendant's arguments that "[b]ecause neither MRF-226 nor MRF-295 exhausted any claims against [him], the Court need not examine whether MRF-2299 exhausted any claims," and "MRF-2299 alleged only that [he] used abusive language and did not allege that [he] engaged in any other retaliatory conduct; as such, it did not exhaust any constitutional claims."  (ECF No. 20, PageID.111-112.)

However, Defendant's argument that Plaintiff failed to exhaust his October 2020 retaliation claim because he "filed his proposed amended complaint on April 9, 2021, *before* MRF-2299 was completed through Step III on April 14, 2021"

21

(ECF No. 20, PageID.112; see also ECF No. 24, PageID.181-182), is more to the point.  "*No action* shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a) (emphasis added).  And this applies to claims added by amendment.  *See Mattox*, 851 F.3d at 592.

The administrative review process is not complete until a prisoner receives the Step III response.  *See Anderson v. Borgerding*, No. 17-cv-12854, 2018 WL 3581137, at *4 (E.D. Mich. July 2, 2018) (collecting cases), *report and recommendation adopted*, 2018 WL 3575934 (E.D. Mich. July 25, 2018).  Here, Plaintiff filed his motion for leave to amend and proposed amended complaint on April 9, 2021 (ECF Nos. 9, 10), but the Step III response for MRF-20-10-2299-17F is stamped as mailed April 14, 2021 (ECF No. 20-3, PageID.143).  Thus, his October 2020 retaliation claim was "brought" or filed before his administrative remedies were exhausted.  *See Kitchen v. Winn*, No. 2:17-cv-11627, 2019 WL 1512778, at *6 (E.D. Mich. Apr. 8, 2019) ("SRF-0870 having been received at Step III on November 7, 2018 and having a Step III response dated November 15, 2018, Plaintiff's January 25, 2019 motion to amend is not premature as to any proposed claims against Vittitow *that are the subject of SRF-0870.*"); *see also Bonga v. Abdellatif*, No. 2:16-cv-13685, 2017 WL 9802708, at *5-6 (E.D. Mich.

Dec. 11, 2017) (a claim is exhausted at the time an action is brought, not when a

claim or action is served or received); *Al-Shimary v. Winn*, No. 2:21-cv-10403,

2022 WL 3590357, at * (E.D. Mich. July 28, 2022), *report and recommendation*

*adopted*, 2022 WL 3588017 (E.D. Mich. Aug. 22, 2022) ("[A]t the time that

Plaintiff filed his supplemental complaint on April 6, 2021, he had not yet

exhausted his administrative remedies as to Defendant Thomas.").  A Court's

failure to insist on strict adherence to the administrative review process and the

requisite pre-filing requirements only encourages the preemptive filing of motions

to supplement or amend and thwarts the twin goals of "giv[ing] an agency an

opportunity to correct its own mistakes with respect to the programs it administers

before it is haled into federal court, and [] discourag[ing] disregard of [the

agency's] procedures."  *Woodford*, 548 U.S. at 89 (internal quotation marks and

citation omitted).

Plaintiff argues in his response brief that the entire grievance process must

be completed within 120 days, and he was free to amend any time after that, which

he did here.  (ECF No. 23, PageID.174-175.)  But, as Defendant asserts (ECF No.

24, PageID.181-182), the current version of MDOC PD 03.02.130, effective

starting March 18, 2019, and applicable here, does not contain such a requirement.

Accordingly, the Court should grant summary judgment on Plaintiff's second retaliation claim, on the basis that he failed to exhaust his administrative remedies before bringing that claim.

### D.     Conclusion

The Court should **GRANT IN PART** and **DENY IN PART** Defendant's motion to dismiss and for summary judgment (ECF No. 20), and grant summary judgment on Count II of Plaintiff's amended complaint (ECF No. 10, PageID.61-62) for failure to exhaust administrative remedies.

### III.    PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc*. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc*. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: January 4, 2023

Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE

I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, January 4, 2023, by electronic and/or U.S. First Class mail.

s/Aaron Flanigan
Case Manager