UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARIO CAVIN,

          Plaintiff,                     Case No. 2:20-cv-12470
                                           District Judge Shalina D. Kumar
v.                                   Magistrate Judge Anthony P. Patti

BRANDON McBRIDE,

          Defendant.

_____/

## REPORT AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No 38) AND ORDER DENYING PLAINTIFF'S MOTION TO DEFER CONSIDERATION (ECF NO. 45)

I.    **RECOMMENDATION:** The Court should **GRANT IN PART AND DENY IN PART** Defendant's motion for summary judgment (ECF No. 38). In addition, for the reasons stated below, Plaintiff's motion to defer consideration (ECF No.45) is **DENIED**.

II.    **REPORT:**

A.    **Procedural History**

Plaintiff Mario Cavin, a state prisoner proceeding *in forma pauperis,* filed this action under 42 U.S.C. § 1983 on September 1, 2020, alleging retaliation in violation of the First Amendment, the Michigan Constitution, and the Elliot-Larsen Civil Rights Act, against Defendant Brandon McBride. (ECF No. 1.) On March

14, 2022, the Judge Shalina D. Kumar granted leave to file an amended complaint. The amended complaint raised two retaliations claims:  Count I for Defendant's alleged conduct on February 29, 2020, and Count II for Defendant's alleged conducted on October 6 and 8, 2020.  Judge Kumar also referred this matter to me for all pretrial purposes.  (ECF No. 17.)  Thereafter, Defendant filed a motion to dismiss and for summary judgment, and I issued a Report and Recommendation ("R&R"), recommending that the Court grant in part and deny in part the motion by granting summary judgment on Count II for failure to exhaust administrative remedies.  (ECF No. 25 at PageID.207.)  Judge Kumar adopted the R&R, and dismissed Count II without prejudice to Plaintiff's right to seek leave to amend his complaint to re-allege Count II after exhausting his administrative remedies.  (ECF No. 26, PageID.211.)

Plaintiff indeed brought a motion to file a second amended complaint.  (ECF No. 30.)  Judge Kumar referred the matter to me again (ECF No. 32), and I granted the motion to amend as unopposed.  (ECF No. 33.)  Thus, the second amended complaint, filed on February 21, 2023, is now the operative pleading.  (*See* ECF No. 31.)  The case proceeded through discovery, which closed on May 5, 2023.  (ECF No. 37.)  Defendant filed a second motion for summary judgment by leave of court on June 5, 2023.  (ECF No. 38.)  Plaintiff responded on July 12, 2023, and attached various purported "affidavits" to his response brief.  Defendant's reply

brief argues that the "affidavits" are improper and should not be considered by the Court in resolving the summary judgment motion.  (ECF No. 44.)  Plaintiff then brought a "Motion to Defer Consideration of the Summary Judgment Motion," arguing that if the "affidavits" are not considered then Plaintiff should be entitled to additional discovery to respond to Defendant's motion for summary judgment. (ECF No. 45.)

## B.    Factual History

### 1.    Count I – February 29, 2020 claim

The underlying facts related to Plaintiff's first retaliation claim, as alleged in his second amended complaint, are as follows.[1]  Throughout January 2020, while Plaintiff was housed at Macomb Correctional Facility (MRF), Defendant McBride, a correctional officer, subjected Plaintiff to constant harassment.  (ECF No. 31, PageID.232, ¶ 5.)  Specifically, "[h]e would single [Plaintiff] out in a group of people for a 'random shakedown', and would search [Plaintiff's] cell no less than three times a week.  Additionally, he made multiple comments about [Plaintiff's] weight and his perceived sexual orientation." (ECF No. 31, PageID.232, ¶ 5.)

---

[1] The allegations in Plaintiff's second amended complaint are identical to those found in his first amended complaint and are set forth above substantially similar to those recounted in my January 4, 2023 report and recommendation.  (ECF No. 25.)  The factual history pulled from the second amended complaint is meant as background to orient the discussion section of this report.  The allegations are not taken as facts and, to the extent any factual disputes arise, the summary judgment analysis will focus on those facts supported by admissible evidence.

After speaking with multiple supervisors about Defendant's behavior, Defendant subjected Plaintiff to another shakedown during which he said, "You thought snitching on me would help you?"  (ECF No. 31, PageID.232-33, ¶ 6.)

Then, on or about February 15, 2020, Defendant stopped Plaintiff on his way back to Housing Unit 2 from his Chance for Life class, demanded a shakedown, and told Plaintiff to return to the school building.  (ECF No. 31, PageID.233, ¶ 7.) Plaintiff returned to the school and spoke with the officer in charge, who confirmed that he had permission to leave, and who called a sergeant at Plaintiff's request.  (ECF No. 31, PageID.233, ¶ 8.)  The sergeant stated that he would speak to Defendant to let him know that Plaintiff had permission to return to the housing unit.  (ECF No. 31, PageID.233,¶ 9.)  But when Plaintiff did return, Defendant called him a snitch.  (ECF No. 31, PageID.233, ¶ 10.)  Despite fear of potential retaliation, Plaintiff filed a grievance (MRF-2002-226-17A) regarding the incident. (ECF No. 31, PageID.233, ¶ 10.)

The conflict between Plaintiff and Defendant continued on February 29, 2020, when Plaintiff attempted to return to the dayroom to retrieve his water bottle. (ECF No. 31, PageID.233, ¶ 11.)  Defendant yelled at Plaintiff not to enter, so he "stood on base and waved down someone in the dayroom to grab his bottle on their way out."  (ECF No. 31, PageID.233, ¶ 11.)  As he did this, Defendant approached him aggressively and said, "I'm sick of your fat ass.  Get the fuck off my base."

4

(ECF No. 31, PageID.233, ¶¶ 11-12.)  Plaintiff filed Grievance MRF-2003-295-17B regarding the incident.  (ECF No. 31, PageID.234, ¶ 12.)

Following the incident, Plaintiff received a misconduct from Defendant for disobeying a direct order.  (ECF No. 31, PageID.234, ¶ 31.)  "After explaining his history with [Defendant] to the Hearings Officer, [Plaintiff] was found guilty but only given two days sanctions."  (ECF No. 31, PageID.234, ¶ 14.)

In Count I of his second amended complaint, Plaintiff claims that Defendant's February 29, 2020 conduct constitutes retaliation in violation of the First Amendment, Sections 2, 3, and 5 of the Michigan Constitution, and Michigan Civil Rights laws.  (ECF No. 31, PageID.235, ¶¶ 19-23.)  In so doing, he asserts that: (1) he engaged in protected conduct when he made verbal complaints to multiple supervisors and filed a grievance; (2) "[Defendant's] immediate (and prolonged) actions constitute[] adverse actions against [him] which were designed to deter him from continuing to engage in his protected conduct.  Specifically, excessive shakedowns, cell searches, and receiving false misconducts would deter a person of ordinary firmness."; and (3) Defendant's actions were motivated by his verbal complaints and grievances.  (ECF No. 31, PageID.235, ¶¶ 19-23.)

### 2.    Count II – October 6 and 8, 2020 claim

When Plaintiff contracted COVID-19, he was moved out of Housing Unit 2 to Unit 3, "where he remained until he was erroneously returned to Unit 2 on

October 4, 2020." (ECF No. 31, PageID.234, ¶ 15.) Two days after his return, on October 6, 2020, Defendant searched Plaintiff's cell and confiscated his JP5 player, stating, "What makes you think this time would be any different?" (ECF No. 31, PageID.234, ¶ 16.) Defendant accused him of having two JP5 players. (ECF No. 31, PageID.234, ¶ 16.)

Then:

> On October 8, 2020, [Plaintiff] was attempting to return to his job in Food Service (around 9:24am) when [Defendant] began screaming at him to "lock the fuck up" and to "get the fuck off [his] base." [Plaintiff] told [Defendant] to call C.O. Brill to verify that [he] was to return to work, but [Defendant] continued screaming and threatened to put [him] in the hole. He then yelled, "You think I give a fuck about a grievance or that bitch ass lawsuit?"

(ECF No. 31, PageID.234, ¶ 17.) Plaintiff alleges that he spoke with supervisors about the incident and was moved days later after someone reviewed the camera footage. (ECF No. 31, PageID.234-35, ¶ 18.)

In Count II of his second amended complaint, Plaintiff claims that Defendant's October 6 and 8, 2020 actions were retaliatory, asserting that: (1) "he engaged in protected conduct when he was in possession of his personal property on October 6, 2020, and attempted to return to his job assignment on October 8, 2020 as required by his supervisors"; (2) Defendant's confiscation of his personal property and threat to put him in segregation constitute adverse actions; and (3) Defendant's actions were motivated by his previous grievances and pending

6

litigation.  (ECF No. 31, PageID.235-36, ¶¶ 24-27.)

### C.    Standard

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  A fact is material if it might affect the outcome of the case under governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  The Court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party."  *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004) (internal citations omitted).

"The moving party has the initial burden of proving that no genuine issue of material fact exists . . . ."  *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); cf. Fed. R. Civ. P. 56 (e)(2) (providing that if a party "fails to properly address another party's assertion of fact," then the court may "consider the fact undisputed for the purposes of the motion.").  "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'"  *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  The nonmoving party must "make an affirmative showing with proper evidence in order to defeat the motion."

*Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009); *see also Metro. Gov't of Nashville & Davidson Cnty.*, 432 F. App'x 435, 441 (6th Cir. 2011) ("The nonmovant must, however, do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]here must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute.") (internal quotation marks and citations omitted).

Summary judgment is appropriate if the evidence favoring the nonmoving party is merely colorable or is not significantly probative. *City Management Corp. v. United States Chem. Co*., 43 F.3d 244, 254 (6th Cir. 1994). In other words, summary judgment is appropriate when "a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case. . . ." *Stansberry*, 651 F.3d at 486 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

The fact that Plaintiff is *pro se* does not lessen his obligations under Rule 56. Rather, "liberal treatment of pro se pleadings does not require lenient treatment of substantive law." *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006). In addition, "[o]nce a case has progressed to the summary judgment stage, . . . 'the liberal pleading standards under *Swierkiewicz* [*v. Sorema N.A.*, 534 U.S. 506, 512-13 (2002)] and [the Federal Rules] are inapplicable.'" *Tucker v. Union of Needletrades, Indus. & Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005)

8

(quoting *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004)).  The Sixth Circuit has made clear that, when opposing summary judgment, a party cannot rely on allegations or denials in unsworn filings and that a party's "status as a pro se litigant does not alter [this] duty on a summary judgment motion." *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010); *see also United States v. Brown*, 7 F. App'x 353, 354 (6th Cir. 2001) (affirming grant of summary judgment against a *pro se* plaintiff because he "failed to present any evidence to defeat the government's motion").

### D. Discussion

#### 1. Motion to Defer Consideration of Defendant's Motion for Summary Judgment

In response to Defendant's motion for summary judgment, Plaintiff attached several purported affidavits signed by himself and by various prison inmates.  In Defendant's reply brief, he argues that the affidavits are improper and should not be considered by the Court.  Thereafter, Plaintiff brought a motion asking the Court to defer consideration of Defendant's motion for summary judgment to allow Plaintiff time to "obtain proper affidavits and amend his response," "order Defendant to conduct a deposition of the inmate witnesses," or "appoint counsel to aid [him] through the discovery/summary judgment phase."  (ECF No. 45, PageID.509-10.)

9

As will be explained below, the inmate affidavits attached Plaintiff's response are improper and should not be considered by the Court in resolving the summary judgment motion. This, however, is not a basis on which to move to defer consideration of the motion for summary judgment.

Pursuant to Fed. R. Civ. P. 16(b), the Court entered an initial scheduling order which set a discovery cut-off of December 8, 2022, and a dispositive motion deadline of January 18, 2023. (ECF No. 21.) This was subsequently extended to a discovery cut-off of May 5, 2023, and a dispositive motion deadline of June 5, 2023. (ECF No. 34.) Although Plaintiff filed one motion to compel, after that motion was denied as moot and discovery was extended, Plaintiff did not file any additional discovery motions or indicate to the Court in any way that there were any issues with obtaining discovery. Instead, the case proceeded through discovery, and through dispositive motion practice. Plaintiff did not file the motion seeking additional discovery or deferment until *after* he filed his response to the motion for summary judgment.

A scheduling order under Fed. R. Civ. 16 may be modified only for "good cause." Fed. R. Civ. P. 16(b)(4). And if the request for an extension comes after a party failed to act, the deadline can only be extended for "excusable neglect." Fed. R. Civ. P. (6)(b)(1)(B). Plaintiff here has shown neither "good cause" nor "excusable neglect" to reopen discovery and extend the discovery period.

10

Moreover, Plaintiff has not submitted a proper affidavit under Fed. R. Civ. P. 56(d) showing "for specified reasons, [he] cannot present facts essential to justify [his] opposition" to Defendant's summary judgment motion.  Accordingly, Plaintiff's motion to defer is **DENIED.**

### 2.    Motion for Summary Judgment

### A. Affidavits

As an initial matter, the Court must decide whether the affidavits attached to Plaintiff's response brief can be considered in the summary judgment analysis. Attached to his response, Plaintiff filed an affidavit signed by himself and three additional documents purportedly signed by inmates Alex Boggess, Radu Muntean, and John Lair.  (ECF No. 43, PageID.469-476.)  Defendant argues that these "affidavits," along with Plaintiff's affidavit, do not constitute admissible evidence and cannot be considered by the Court in resolving the summary judgment motion.

### i.    Fellow Prisoner Affidavits

Notwithstanding the fact that they all claim to have been "first duly sworn," the three prisoner affidavits are not notarized, nor are they submitted with a statement that they are signed under penalty of perjury.  Instead, each affidavit concludes with a statement that the undersigned makes the affidavit freely or voluntarily and that he is competent to testify to the facts if called to do so. (ECF

No. 43, PageID.470,473,476.)  In addition, Alex Boggess's affidavit contains a

qualification that the foregoing is true to the best of his knowledge, information,

and belief.  (ECF No. 43, PageID.470.)

Under the Federal Rules of Civil Procedure, "[a]n affidavit or declaration

used to support or oppose a motion must be made on personal knowledge, set out

facts that would be admissible in evidence, and show that the affiant or declarant is

competent to testify on the matters stated."  Fed. R. Civ. P. 56(c)(4).  "While an

'affidavit' is required to be sworn to by the affiant in front of an 'officer authorized

to administer oaths,' *see* Black's Law Dictionary 54 (5th ed.1979), 28 U.S.C. §

1746 allows for 'unsworn declarations under penalty of perjury' to support any

matter that legally requires an affidavit to support it."  *Peters v. Lincoln Elec. Co.*,

285 F.3d 456, 475 (6th Cir. 2002).  Thus, the fact that the fellow prisoner affidavits

are not notarized is not fatal to reliance upon them, so long as they comport with

the requirements of 28 U.S.C. § 1746.

Section 1746 provides:

Wherever, under any law of the United States or under any rule, regulation,
order, or requirement made pursuant to law, any matter is required or
permitted to be supported, evidenced, established, or proved by the sworn
declaration, verification, certificate, statement, oath, or affidavit, in writing
of the person making the same (other than a deposition, or an oath of office,
or an oath required to be taken before a specified official other than a notary
public), such matter may, with like force and effect, be supported,
evidenced, established, or proved by the unsworn declaration, certificate,
verification, or statement, in writing of such person which is subscribed by
him, as true under penalty of perjury, and dated, in substantially the

following form:

> . . .

> (2) If executed within the United States, its territories, possessions, or commonwealths: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature)".

28 U.S.C. § 1746.  Here, the documents begin with a statement that the affiant has been "duly sworn," but do not include a notary's signature, and do not include a statement that the affidavits have been made under penalty of perjury.  However, in order for an affidavit to be admissible, it "is required to be sworn to by the affiant in front of an 'officer authorized to administer oaths[,]" *See Worthy v. Michigan Bell Tel. Co*., 472 F. App'x 342, 343 (6th Cir. 2012) (citations omitted). "Alternatively, under 28 U.S.C. § 1746, declarations may take the place of affidavits, so long as those declarations are made under penalty of perjury, certified as true and correct, dated, and signed. *Id.* at 343-44 (citing *Pollock v. Pollock*, 154 F.3d 601, 612 n. 20 (6th Cir.1998); *Bonds v. Cox*, 20 F.3d 697, 702 (6th Cir.1994))." "Statements that are not sworn in one of these two ways are not competent summary judgment evidence." *Id.* at 344 (citing *Harris v. J.B. Robinson Jewelers*, 627 F.3d 235, 239 n. 1 (6th Cir.2010) ("[A] court may not consider unsworn statements when ruling on a motion for summary judgment.") (internal citation omitted)).  Where, as here, the declarations do not include the phrase "under

penalty of perjury," they do not meet the explicit language of the statute and cannot be relied upon in summary judgment motions.  *See Cross v. AMC Detroit, Inc*., No. 18-11968, 2019 WL 2570371, at *6 (E.D. Mich. June 20, 2019) (Edmunds, J.) (finding that declarations not including "under penalty of perjury" cannot be used as evidence); *see also Bonds v. Cox*, 20 F.3d 697, 702 (6th Cir. 1994) ("Unsworn declarations are permitted to be used as evidence only if 'subscribed ... as true under penalty of perjury....' ") (quoting 28 U.S.C. § 1746).  As Judge Edmunds has stated, "Given the explicit language of the statute, these technically deficient declarations are technically improper for consideration by the Court." *Cross*, 2019 WL 2570371, at *6 (citing *Hogan v. Rent-A-Center, Inc*., 228 F.Supp.2d 802, 806 n. 8 (S.D. Ohio 2002)).  Accordingly, the Court should not consider the three proposed prisoner affidavits in considering the summary judgment motion.

### ii.   Plaintiff's own declaration

Unlike the fellow prisoner affidavits, Plaintiff's own "affidavit" *does* include the required elements to qualify as a declaration under 28 U.S.C. § 1746. Defendant concedes as such, but argues that Plaintiff's declaration is nonetheless "replete with assertions that either lack foundation or are otherwise inadmissible hearsay."  (ECF No. 44, PageID.486.)  Defendant is correct that Plaintiff's declaration must be admissible under the rules of evidence, and must be based on matters on which he has personal knowledge. *See* Fed. R. Evid. 602.  However, the

14

Court need not issue a ruling barring Plaintiff's declaration in its entirety, but can instead consider it only to the extent it provides admissible evidence on a material fact.  In his declaration, Plaintiff makes the following averments:

- Plaintiff states that he spoke with several supervisors about Defendant's alleged "harassment campaign" against him.  He states that nothing got resolved, but that Defendant would call him a "snitch" in front of other prisoners.  (ECF No. 43, PageID.465, ¶ 1.)  Plaintiff also asserts that Defendant knew calling him a snitch would get him assaulted in prison environments.  (*Id.*)

- Plaintiff states that after each cell search to which he was subjected by Defendant, he would ask the next shift whether the search had been logged and "[v]ery few of [Defendant's] shakedowns were ever logged in."  (ECF No. 43, PageID.465, ¶ 2.)  Plaintiff attempts to attribute this to a "custom" he observed over 23 years in incarceration that "[v]ery few staff are willing to leave a 'paper trail.'"  (*Id.*)

- Plaintiff states that he has witnessed Defendant write false misconducts on individuals.  (ECF No. 43, PageID.465, ¶ 3.)  He provides one example of a prisoner who told Defendant to "get fucked," and Defendant falsely accused the prisoner of refusing a shakedown, which resulted in the prisoner being placed in segregation.  (*Id.* at PageID.465-66.)

- Plaintiff states that he observed a prisoner get into an argument with Defendant, and then that prisoner had his cell "searched and destroyed less than an hour later."  (ECF No. 43, PageID.466, ¶ 4.)  He states that Defendant dumped a garbage can upside down on the prisoner's bed.  (*Id.*)

- He claims that he has seen Defendant "attempt to write misconducts on prisoners because the initial misconduct was either dismissed or the person was found not guilty."  (ECF No. 43, PageID.466, ¶ 5.)

- Plaintiff states that "[o]ne prisoner filed a grievance against [Defendant] due to inappropriate conduct with another officer."  (ECF No. 43,

PageID.466, ¶ 6.)  According to Plaintiff, Defendant searched the prisoner's cell and took his television and other property, and then took other prisoners' televisions as well, telling them they would get their property back when "the snitch" was gone.  (ECF No. 43, PageID.466, ¶ 6.)  Plaintiff does not indicate how he knows this information.

- Plaintiff claims that Defendant caused such a "hostile living and working environment that CO Terrence called to have [Defendant] removed from Unit 2."  (ECF No. 43, PageID.466, ¶ 7.)

- Plaintiff claims that after multiple complaints to PC MacLean, Defendant announced over the intercom, "I don't give a fuck what ARUS says, I'll write any ticket I want." (ECF No. 43, PageID.466, ¶ 8.)

- After he was returned to Unit 2 in October of 2020, Plaintiff states that he told MacLean that he could not remain in Unit 2 because Defendant "would try setting me up with something or lying to get me put in segregation."  (ECF No. 43, PageID.466, ¶ 9.)  Plaintiff avers that he reminded MacLean of his history with Defendant, who typed something into the computer and "verified the lawsuit," and then Plaintiff was moved to Unit 3 a few days later.  (ECF No. 43, PageID.466, ¶ 9.)

- Plaintiff states that at the hearing relating to his JP5 player, he did not tell MacLean that it was his old one, but instead he reiterated to MacLean that Defendant "was simply retaliating because of previous complaints, grievances, and the pending lawsuit."  (ECF No. 43, PageID.466, ¶ 10.)  MacLean suggested that Plaintiff "send the JP5 home and request a replacement," which Plaintiff agreed to.  (ECF No. 43, PageID.467, ¶ 11.)

- Plaintiff states that on October 8, 2020 he walked into the unit from food service still wearing his "kitchen whites" and he informed the other officer (but loud enough for Defendant to hear) that he was in the unit to pick up trays.  (ECF No. 43, PageID.467, ¶ 11.) He states that although the emergency count was over, the units remain on lockdown until the control center opens it. Plaintiff states that if Defendant had any doubt whether he had permission to be there, he could have called Plaintiff's supervisors, but instead he threatened Plaintiff with segregation.  (ECF No. 43, PageID.467, ¶ 11.)

- Plaintiff indicates that after he filed this lawsuit, "word about the lawsuit quickly traveled throughout the [prison] population," and several prisoners came forward with their own issues about Defendant. (ECF No. 43, PageID.467, ¶ 12.)  Plaintiff states that when he would pick up legal mail, one or two of the officers would joke with him "don't mess with that one or you'll get sued."  Plaintiff also states that "others" commented that it "was only a matter of time before somebody sued" Defendant. (ECF No. 43, PageID.467, ¶ 12.)

- Plaintiff claims that because "[w]ord traveled fast throughout the facility, it seems unlikely that [Defendant] would not have known about" the lawsuit. (ECF No. 43, PageID.467, ¶ 13.)

While Defendant is correct that much of Plaintiff's declaration attributes motives, out of court statements, or knowledge to others, the declaration also sets forth instances where Plaintiff directly observed Defendant's actions, or heard statements made which could be offered for purposes other than to prove the truth of the matter asserted.  Moreover, Defendant's own statements could be admissible as non-hearsay under Federal Rule of Evidence 801(d)(2).  Accordingly, while the fellow prisoner affidavits are improper and inadmissible in their entirety, Plaintiff's declaration will be considered to the extent its contents are not inadmissible hearsay or otherwise improper under the rules of evidence.

## B. Count I

In Count I, Plaintiff brings a claim for First Amendment retaliation.  "A retaliation claim essentially entails three elements: (1) the plaintiff engaged in

17

protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

In his motion to dismiss, Defendant focused his argument for dismissal on the second element, whether Plaintiff had alleged an adverse action.  On Rule 12(b)(6) review, I concluded, and Judge Kumar agreed, that Plaintiff's allegations, if proven, could constitute an adverse action.  Now, on summary judgment, Defendant argues that Plaintiff cannot show the other two elements of a retaliation claim, namely, that Plaintiff was engaged in "protected conduct" or that Plaintiff can show causation.

## 1.  Protected Conduct

Plaintiff's second amendment complaint alleges that he was engaged in protected conduct when he "made verbal complaints to multiple supervisors and fil[ed] a grievance."  (ECF No. 31, PageID.235.)  Defendant argues that because the underlying grievance was frivolous, Plaintiff cannot show that he was engaged in protected conduct.

"Although '[a]n inmate has an undisputed First Amendment right to file grievances against prison officials on his own behalf, . . . [t]his right is protected . .

18

. only if the grievances are not frivolous.'" *Clark v. Johnston*, 413 F. App'x 804, 812 (6th Cir. 2011) (quoting *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir.2000)). "In other words, an inmate's pursuit of grievances against prison officials can constitute protected conduct for purposes of a retaliation claim, but 'only to the extent that the underlying claims ha[ve] merit.'" *Id.* (quoting *Herron*, 203 F.3d at 415); *see also Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010) (holding that, although filing grievances satisfies the protected conduct necessary to support a retaliation claim, frivolous grievances are not protected under the First Amendment).

Under Count I, Plaintiff relies on grievance 226-17A as his protected conduct. In this grievance, Plaintiff indicated that Defendant "made him return to his call-out in 300 building, but did not make other prisoners do the same. [Plaintiff] state[d] he is being targeted by [Defendant]." (ECF No. 20-3, PageID.162.) Specifically, Plaintiff complained in his grievance that upon returning from his class on February 15, 2020, Defendant demanded a shakedown and then ordered him to go back to class, despite Plaintiff explaining that he was permitted to return to the unit and despite that Defendant permitted at least three other prisoners to return to the unit. (ECF No. 20-3, PageID.161.) Plaintiff complained in his grievance that Defendant had targeted Plaintiff "to harass, intimidate or degrade" him, had violated multiple provisions of the employee

19

handbook, had expressed an intent to retaliate against him for complaining about his conduct, and had "used his speech and actions to cause mental intimidation and humiliation." (ECF No. 20-3, PageID.161.) The grievance was denied, with the following summary: "Respondent could not review MRF Monitoring Surveillance Video because Grievant did not give a specific time to when the cited occurrences happened, therefore, Prisoner Cavin 326204 grievance issue has not been substantiated; grievance denied." (ECF No. 20-3, PageID.162.) Both of Plaintiff's appeals were denied. (ECF No. 20-3, PageID.158-160.)

Defendant argues that Plaintiff's grievance was frivolous because: (1) verbal abuse amounts to a frivolous grievance; and, (2) facility records indicate that the only searches of Cavin's person or cell occurred after the grievance was filed, not before, so the grievance was baseless. (ECF No. 38, PageID.281.) The Court should reject Defendant's argument and find, at a minimum, a triable issue with respect to whether the grievance was frivolous.

"Beyond the general acknowledgment that grievances used to abuse or manipulate the grievance system are frivolous, limited authority exists as to what renders a grievance frivolous." *Webb v. Golladay*, No. 2:19-CV-110, 2022 WL 4369931, at *3 (W.D. Mich. May 12, 2022), *report and recommendation adopted*, No. 2:19-CV-110, 2022 WL 4365860 (W.D. Mich. Sept. 21, 2022). Grievances need not identify unconstitutional conduct to be nonfrivolous, as "even grievances

20

complaining of unsatisfactory conditions that adversely impact the prisoner but do not violate the constitution are expressions of speech protected by the First Amendment." *See Id.* at *3 (citing *Rayos v. Leavitt*, No. 1:20-cv-968, 2022 WL 873633, at *1 (W.D. Mich. Mar. 24, 2022) (requiring a grievance to "assert a constitutional right in order to constitute protected conduct . . . is not the proper standard.")).

Instead, "cases in this Circuit appear to suggest that a prisoner's grievance is frivolous when the underlying grievance itself is *de minimis*." *Maben v. Thelen* 887 F.3d 252, 264–65 (6th Cir. 2018) (collecting cases).  Courts have also found grievances involving "verifiably untrue" allegations to be frivolous. *See Chrzan v. Mackay*, No. 1:19-cv-116, 2020 WL 7774741, at *3 (W.D. Mich. Nov. 30, 2020) (finding that the plaintiff's grievance was frivolous where a video recording of the underlying event contradicted the allegations in the grievance), *report and recommendation adopted*, No. 1:19-cv-116, 2020 WL 7773419 (W.D. Mich. Dec. 30, 2020)).  Here, it is not clear, as a matter of law, that Plaintiff's grievance was either *de minimis* or "verifiably untrue."  Plaintiff's grievance was denied, not for being untrue, but because the prison was unable to locate camera footage to substantiate it.

First, as the Western District of Michigan has held, a "finding of insufficient evidence to support the alleged violation provides no basis to conclude that

Plaintiff's PREA claim was factually frivolous." *Onumonu v. Michigan Dep't of Corr.*, No. 1:20-CV-816, 2022 WL 19003249, at *3 (W.D. Mich. Dec. 29, 2022), *report and recommendation adopted*, No. 1:20-CV-816, 2023 WL 2134243 (W.D. Mich. Feb. 21, 2023).  Moreover, while Defendant states that Plaintiff's grievance was based solely on "verbal abuse," the grievance in fact was based on an allegation of targeted harassment, intimidation, humiliation, and retaliatory threats, as well as an unprovoked shakedown and making him go back to class when others were not so required.  (ECF No. 20-3, PageID.161-62.)  I cannot conclude that these allegations describe complaints that are "de minimis."  *Contra Thaddeus-X v. Love*, No. 98-2211, 2000 WL 712354, at *2–3 (6th Cir. May 22, 2000) (finding that a grievance complaining about a prison employee eating at his desk was "patently frivolous as the defendant's conduct had no adverse impact on [the plaintiff]"); *White–Bey v. Griggs*, 43 F. App'x 792, 794 (6th Cir. 2002) (finding grievances that "concerned being required to use a typewriter rather than a computer, and being required to sit quietly in defendant's office after being told again that there was no computer available for him to use" to be frivolous and not to "rise to the level of protected conduct").  A non-frivolous grievance has also been described as a "legitimate" grievance. *Pasley v. Conerly*, 345 F. App'x 981, 985 (6th Cir. 2009). Fundamentally, Plaintiff's grievance was that Defendant was targeting him, treating him unfairly, threatening him, and intimidating him.  This cannot be said

22

to be a *de minimis* or frivolous grievance.

Defendant suggests that the record evidence does not support Plaintiff's claim of "shakedowns," because the only two searches noted in the prison log occurred on February 21 and 22, 2020.  (ECF No. 38, PageID.281.)  But Plaintiff's affidavit, if believed, provides evidence to find that Defendant did not always record his searches of Plaintiff.  (ECF No. 43, PageID.465, ¶ 2.)  This is not a situation where Plaintiff's grievance was shown to be false or unfounded, such as by video evidence to the contrary.  *See Sublett v. Bryant*, No. 16-6111, 2017 WL 11773742, at *2 (6th Cir. June 1, 2017).  Because Plaintiff's grievances cannot be said to be indisputably frivolous, there is sufficient evidence to create a jury question as to whether Plaintiff was engaged in protected conduct to meet the first element of a retaliation claim.

## `   2.  Adverse Action

Although Defendant's brief states he is focused on the first and third elements of a retaliation claim, Defendant makes a side comment that Plaintiff cannot show an "adverse action" because he is relying solely on verbal attacks and isolated searches.  (ECF No. 38, PageID.281-82.)  As previously discussed in my January 4, 2023 report and recommendation, and as stated above, Plaintiff relies on more than simply verbal abuse and isolated searches.  (*See* ECF No. 25.)  Plaintiff alleges a pattern of abuse and excessive searches and shakedowns, and support for

23

his allegations can be found in his declaration and deposition testimony.  He

contends that following the grievance, Defendant's conduct constituted adverse

actions.  The heading of Count I references Defendant's February 29, 2020

conduct as retaliation, but within Count I he also refers to "excessive shakedowns,

cell searches, and receiving false misconducts."  (ECF No. 31, PageID. 235.)

During his deposition, Plaintiff says that in the two weeks after his February 2020

grievance and before the February 29th incident, Defendant did not do anything that

really stood out, "[j]ust the standard, 'Come here.  Let me get a shakedown,' check

my room, things like that.  No other out-of-the-way comments in between those."

(ECF No. 38-2, PageID.301.)  Thus, Plaintiff testified that during the two weeks

following his grievance, Defendant continued with shakedowns and room checks.

Plaintiff also points to the incident on February 29, 2020 as further evidence

of adverse conduct.  In his deposition, Plaintiff testified that he was in the dayroom

and had to go use the bathroom so he went downstairs.  (ECF No. 38-2,

PageID.301.)  When he came back, Plaintiff was told it was close to count time,

and Defendant told him not to go back in the dayroom.  Plaintiff had left his water

bottle in the dayroom so, he testified, he stood where he was and tried to get

someone's attention who was still in the dayroom to bring him his water bottle.

(ECF No. 38-2, PageID.301-02.)  Defendant then accused him of trying to go into

the dayroom, he "got in [Plaintiff's] face, and started cussing [him] out."  (ECF

24

No. 38-2, PageID.302.)  Plaintiff told Defendant that he was standing in one spot and not moving, and then according to Plaintiff, Defendant "told me to get my fat ass off base.  He's tired of me anyway; I think I can file a grievance on him and do whatever I want."  (ECF No. 38-2, PageID.302.)  Plaintiff told him he was not trying to go in the dayroom but he just wanted to get his bottle. Defendant told him to get off base, so he turned around and tried to leave but then Defendant demanded Plaintiff's ID, which Plaintiff put on the windowsill.  (ECF No. 38-2, PageID.302.)

The description of the February 29 event, coupled with Plaintiff's averment that Defendant did not always record his searches, and the various averments of Defendant's verbal harassment amounts to sufficient evidence to create a triable issue on whether Plaintiff suffered an adverse action.  *See Reynolds-Bey*, 428 F. App'x at 503-04.  *See also Thomas v. Eby*, 481 F.3d 434, 441 (6th Cir. 2007) ("Because inmates convicted of major-misconduct charges lose their ability to accumulate disciplinary credits for that month, inmates of ordinary firmness would be more reluctant to engage in protected conduct that may lead to the retaliatory issuance of misconduct tickets."); *Brown v. Crowley*, 312 F.3d 782, 789 (6th Cir. 2002) ("placing a prisoner in administrative segregation is an adverse action.") (citations omitted) *Thaddeus-X*, 175 F.3d at 398 ("Harassment, physical threats, and transfer to the area of the prison used to house mentally disturbed inmates,

especially combined with the conditions allegedly present there, would likely have a strong deterrent effect.").  To the extent Defendant argues that Plaintiff cannot show an "adverse action," this argument should be rejected.

### 3. Causation and Nonretaliatory Basis

Defendant next argues that there is insufficient evidence to demonstrate causation.  In two paragraphs, Defendant asserts simply that "the record evidence in this case shows that [Plaintiff] was issued a misconduct for failing to obey a direct and reasonable order issued by McBride," and therefore "Cavin cannot demonstrate that he would not have received a misconduct 'but-for' a grievance he initiated two weeks earlier."  (ECF No. 38, PageID.284.)  Defendant relies on Plaintiff's misconduct violation and the fact that he was found "guilty" at the misconduct hearing.  Specifically, the notes on the Hearing Report are as follows:

> Upon review, the body of the misconduct does meet the criteria of the charge and based upon staff credibility that the prisoner did not comply to [sic] the initial staff orders given to clear the base. The camera review shows staff and the prisoner interacting and there is no reason to determine that the order given was reasonable.[2]

(ECF No. 38-4, PageID.318.)

To prevail on a First Amendment retaliation claim, "a plaintiff must establish a 'causal connection' between the government defendant's 'retaliatory

---

[2] The Hearing Report states that there is no reason to determine that the order given was "reasonable," although a likely interpretation is that this is a typo and meant to read "unreasonable," given that Plaintiff was found guilty of the misconduct.

animus' and the plaintiff's 'subsequent injury.'" *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722, 204 L. Ed. 2d 1 (2019) (citing *Hartman v. Moore*, 547 U.S. 250, 259 (2006)). "It is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured—the motive must cause the injury. Specifically, it must be a 'but-for' cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Id.* (citing *Hartman*, 547 U.S. at 260 (finding that although it "may be dishonorable to act with an unconstitutional motive," an official's "action colored by some degree of bad motive does not amount to a constitutional tort if that action would have been taken anyway")).

While it is noteworthy that the February 29th incident happened a mere two weeks after Plaintiff filed his grievance, even if "the temporal proximity between [Plaintiff] filing his grievances and the decision to transfer him provides some circumstantial support for a causal connection[,]" the Sixth Circuit has noted that "this evidence alone is not sufficient to meet [Plaintiff]'s burden to show that the filing of grievances was a substantial or motivating factor for his transfer." *Smith v. Campbell*, 250 F.3d 1032, 1038 (6th Cir. 2001). *See also Hill*, 630 F.3d at 476 ("Although this court has concluded that evidence of temporal proximity between filing grievances and the adverse action provides some support for establishing retaliatory motive, it has been reluctant to find that such evidence alone establishes

retaliatory motive.") (citing *Holzemer v. City of Memphis*, 621 F.3d 512, 526 (6th Cir. 2010)).  Thus, Plaintiff must rely on more than temporal proximity to show causation.

Defendant argues that since he was found guilty of the misconduct there is no "but-for" causation.  While Plaintiff was indeed found "guilty" of the misconduct charge on February 29th (ECF No. 38-4, PageID.318), the Court should disagree with Defendant's argument.  First, Plaintiff relies on more than simply this incident as evidence of retaliation.  Second, even if Plaintiff was found guilty of disobeying a direct order, Plaintiff argued at the hearing that Defendant's story was untrue and Plaintiff further testified at his deposition that he did not enter the dayroom.  Plaintiff also testified at his deposition that during this incident, Defendant "told me to get my fat ass off base.  He's tired of me anyway; I think I can file a grievance on him and do whatever I want."  (ECF No. 38-2, PageID.302.)  Based on this evidence, a reasonable jury could find that the entire February 29th interaction was in retaliation for Plaintiff filing a grievance two weeks prior.

For the same reason, the Court should reject Defendant's argument that "even if [Plaintiff] has met his burden with respect to all three elements of his First Amendment claim, [Defendant] still had a nonretaliatory basis for issuing a misconduct ticket against [Plaintiff]" in that Plaintiff failed to "obey a direct order,

28

a legitimate prisoner rule violation." (ECF No. 38, PageID.284.)

> Once the plaintiff has met his burden of establishing that his protected
> conduct was a motivating factor behind any harm, the burden of production
> shifts to the defendant. *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*,
> 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). If the defendant can
> show that he would have taken the same action in the absence of the
> protected activity, he is entitled to prevail on summary judgment.

*Thaddeus-X v. Blatter*, 175 F.3d at 399.  Defendant asserts that, even if Plaintiff

can show a prima facie case of First Amendment retaliation, Defendant has offered

a nonretaliatory basis for his action, namely, that Plaintiff failed to obey a direct

order.

This argument fails for the same reasons as the causation argument.  A jury

*could* find that the misconduct ticket would have issued regardless.  Or a jury could

find that Defendant would never have approached Plaintiff in the absence of the

previously filed grievance.  This case is similar to one from the Western District of

Michigan, where the court held:

> On the record before the Court, a reasonable juror might determine that
> Chamberlin would have issued the misconduct tickets regardless of the
> grievances, but a reasonable juror might instead determine that the mistaken
> belief was pretext for Chamberlin's true motivation: retaliation. Thus, the
> undersigned concludes that Chamberlin has not shown that no genuine issue
> of material fact exists with respect to the causation element of Wilcox's
> second and third retaliation claims. Accordingly, the undersigned
> recommends that the Court deny PC Chamberlin summary judgment as to
> Wilcox's second and third retaliation claims.

*Wilcox v. Chamberlin*, No. 2:20-CV-178, 2022 WL 17586332, at *5 (W.D. Mich.

Nov. 15, 2022), *report and recommendation adopted*, No. 2:20-CV-178, 2022 WL

17584964 (W.D. Mich. Dec. 12, 2022).  As in *Wilcox,* the evidence here is capable of two different interpretations and thus Defendant's arguments must be rejected.

On summary judgment, the Court "views the evidence, all facts, and *any inferences that may be drawn from the facts* in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc.*, 95 F. App'x at 135 (internal citations omitted) (emphasis added).  Because there is sufficient evidence, based on Plaintiff's testimony and the inferences drawn therefrom, that a reasonable jury *could* find Plaintiff's misconduct violation was in retaliation for filing a grievance and even engaging with Plaintiff in the first place was in retaliation for that grievance, the Court should deny Defendant's motion for summary judgment on Count I.

## C.  Count II

### 1.  Protected Conduct

In Count II of his second amended complaint, Plaintiff claims that Defendant's October 6 and 8, 2020 actions were retaliatory, asserting that: (1) "he engaged in protected conduct when he was in possession of his personal property on October 6, 2020, and attempted to return to his job assignment on October 8, 2020 as required by his supervisors"; (2) Defendant's confiscation of his personal property and threat to put him in segregation constitute adverse actions; and (3) Defendant's actions were motivated by his previous grievances and pending

30

litigation.  (ECF No. 31, PageID.235-36, ¶¶ 24-27.)

Defendant argues that possessing personal property and attempting a job assignment do not constitute "protected conduct," under the First Amendment and "[a]s such, [Plaintiff] has failed to identify any cognizable First Amendment protected conduct and his claim arising out of October 6, 2020 and October 8, 2020 fails."  (ECF No. 38.)  Defendant's argument misses the mark.  While it is true that Count II contains an inartfully drafted reference to "protected conduct," as to possessing personal property and attempting to return to a job assignment (ECF No. 31, PageID.236, ¶ 25), a fair reading of the second amended complaint makes it clear in the very next sentence that interfering with property possession ("confiscating legitimate property") and preventing his return to his job assignment ("threatening to put Cavin in segregation") are the alleged *retaliation*, not the protected conduct (ECF No. 31, PageID.236, ¶ 26).  The heading of Count II states that the two October incidents "constitute[] retaliation under the [F]irst Amendment, the Michigan Constitution, and the Michigan Civil Rights Laws."  (ECF No. 31, PageID.235.)

While Plaintiff is proceeding *pro se*, it is clear that he alleges ongoing retaliation and unfair treatment from Defendant arising out of his grievances and this litigation.  The October incidents which Plaintiff describes are his claims of retaliation, not his claims of First Amendment protected conduct.  Defendant's

argument is therefore misguided.

## 2. Causation

Defendant also argues that this pending litigation cannot form the basis of any protected conduct because he did not know of the lawsuit until January 24, 2022. For support, Defendant points to his affidavit in which he avers "I did not learn of [Plaintiff's] suit against me until January 24, 2022 as that is when I was initially served with the complaint in this matter." (ECF No. 38-3, PageID.312.) Case law provides that Defendant could not unlawfully retaliate against Plaintiff because of his protected conduct if Defendant was unaware of the protected conduct in the first instance. *See Mulhall v. Ashcroft*, 287 F.3d 543, 554 (6th Cir. 2002) (concluding that the district court did not err in granting summary judgment on the plaintiff's Title VII retaliation claim where the plaintiff "failed to produce evidence sufficient to establish that the officials taking the adverse . . . action knew of his protected activity").

In Plaintiff's second amended complaint, he alleges that on October 8, 2020, Defendant shouted many things at Plaintiff, including "You think I give a fuck about a grievance or that bitch ass lawsuit?" (Plaintiff also relayed the same version in his initial grievance about the event. (ECF No. 20-3, PageID.146)) Thus, if Plaintiff's allegations are to be believed, Defendant must have known about the lawsuit. That said, Plaintiff's second amended complaint, while

32

purportedly "verified," was not signed under penalty of perjury, and the allegations in the complaint cannot be relied upon as evidence. Plaintiff cannot support his claims with allegations or denials in unsworn filings and his "status as a pro se litigant does not alter [this] duty on a summary judgment motion." *Viergutz*, 375 F. App'x at 485. Defendant attaches to his motion portions of Plaintiff's deposition, which largely track his allegations with respect to the October incident. However, Defendant does not include the entire deposition, so the Court is unable to verify whether this portion of his testimony was consistent with his complaint. (*See* ECF No. 38-2.) It is Plaintiff's burden to point to admissible evidence to support his position. The most he has submitted on this point is his declaration, which states:

- After he filed this lawsuit, "word about the lawsuit quickly traveled throughout the [prison] population," and several prisoners came forward with their own issues about Defendant. (ECF No. 43, PageID.467, ¶ 12.) Plaintiff states that when he would pick up legal mail, one or two of the officers would joke with him "don't mess with that one or you'll get sued." Plaintiff also states that "others" commented that it "was only a matter of time before somebody sued" Defendant. (ECF No. 43, PageID.467, ¶ 12.)

- Because "[w]ord traveled fast throughout the facility, it seems *unlikely* that [Defendant] would not have known about" the lawsuit. (ECF No. 43, PageID.467, ¶ 13 (emphasis added).)

Plaintiff therefore intimates that because the lawsuit was generally known in the prison, Defendant must have known about it. This, alone, cannot be enough to contest Defendant's testimony that he did not know of the lawsuit until 2022. *See*

33

*Onumonu v. Michigan Dep't of Corr.*, No. 1:20-CV-816, 2022 WL 19003249, at

*4 (W.D. Mich. Dec. 29, 2022), *report and recommendation adopted*, No. 1:20-

CV-816, 2023 WL 2134243 (W.D. Mich. Feb. 21, 2023) (rejecting causation claim

based on the plaintiff's "speculation and conjecture" that the prison was a "small

facility" where the officers would know of any grievances).  As the Western

District of Michigan stated in response to a similar argument:

> At bottom, Plaintiff cannot sustain his summary judgment burden by
> reliance on these unsupported assertions. "A party cannot defeat summary
> judgment with 'conclusory allegations, speculation, and unsubstantiated
> assertions.'" *Jennings v. County of Monroe*, 630 F. App'x 547, 555 (6th Cir.
> 2015) (quoting *Gooden v. City of Memphis Police Dep't*, 67 F. App'x 893,
> 894 (6th Cir. 2003)); *see also Harrow Prods., Inc. v. Liberty Mut. Ins. Co.*,
> 64 F.3d 1015, 2010 [sic] (6th Cir. 1995) (noting that "rank speculation is
> insufficient to withstand summary judgment"); *cf.* 10A Charles Alan Wright
> & Arthur R. Miller, Federal Practice and Procedure § 2727. 2 (4th ed. 2021)
> (observing that "evidence in opposition to [a summary judgment] motion
> that clearly is without any force," such as evidence based on "mere
> suspicions," "is insufficient to raise a genuine issue").

*Onumonu*, 2022 WL 19003249, *4.  Thus, the Court should agree with

Defendant's argument that this lawsuit cannot form the basis of "protected

conduct" in Plaintiff's retaliation claims.  Instead, he will have to rely on his

grievances to establish "protected conduct."

### 3. Non-retaliatory basis for Defendant's actions

As with Count I, Defendant asserts that because Plaintiff violated prison

policies and disregarded instructions from Defendant, this constituted a valid, non-

retaliatory reason for Defendant to confiscate Plaintiff's property and issue orders

to Plaintiff.  Again, as with Count I, the Court should reject this argument as the record evidence is amenable to different interpretations and on summary judgment the Court is required to draw all inferences in favor of Plaintiff.  Plaintiff testified that a couple of days after returning to his cell after having COVID, Defendant "decided to come shake my room down, and he told me to step out. And when he told me to step out, [he] said, 'You thought this time would be any different?'" (ECF No. 38-2, PageID.304.)  In the context of Plaintiff's argument that Defendant consistently targeted him for excessive shakedowns and searches, a reasonable jury could find that Defendant's statement that "you thought this time would be any different," was in reference to Plaintiff's grievances and complaints about Defendant's conduct.  Further, in his deposition, Plaintiff testified that during the October 8, 2020 incident he had been told by another officer to go and retrieve kitchen trays from his unit.  (ECF No. 38-2, PageID.306.)  Defendant saw him and immediately told him to "get the fuck off [his] base" and made him lie down.  (*Id.*) In light of the other evidence submitted by Plaintiff, a jury could conclude that this behavior was part of a pattern of retaliatory conduct by Defendant. *See Wilcox*, 2022 WL 17586332, at *5.

### 4.  Exhaustion

Under the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e *et seq*., a prisoner may not bring an action "with respect to prison conditions under section

1983 of this title, or any other Federal law . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  Congress enacted the provision to address the "outsized share" of prisoner litigation filings and to ensure that "the flood of nonmeritorious claims does not submerge and effectively preclude consideration of the allegations with merit." *Jones v. Bock*, 549 U.S. 199, 203-04 (2007).  Put another way, the purpose of § 1997e(a) is to "reduce the quantity and improve the quality of prisoner suits[.]" *Porter v. Nussle*, 534 U.S. 516, 524 (2002).  In addition, exhaustion "gives an agency an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court, and it discourages disregard of [the agency's] procedures." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006) (internal quotation marks and citation omitted).  "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones*, 549 U.S. at 211.

Defendant argues that Plaintiff failed to exhaust any claim related to his JP5 player.  Plaintiff asserts that two days after his return to his unit after having COVID, Defendant searched Plaintiff's cell and confiscated his JP5 player, stating, "What makes you think this time would be any different?"  (ECF No. 31, PageID.234, ¶ 16.)   It does not appear that Plaintiff is bringing a claim based on unlawful confiscation for return of a JP5 player.  Instead, Plaintiff is pointing to the October 6 incident as evidence of a retaliatory search, shakedown, and harassment,

allegations that appear continuously in Plaintiff's grievances.

Fundamentally, however, the Court has already ruled on the exhaustion issue as to Count II. In its February 3, 2023 order, which adopted my report and recommendation, the Court specifically dismissed "Count II of the amended complaint, which relates to [Defendant's] retaliatory actions on October 6 and 8, 2020," as it was unexhausted at the time the amended complaint was filed. (ECF No. 26, PageID.210-11.) But the Court also held, "Now that Cavin has received his Step III response regarding the October 6 and 8 allegations and the issue is properly exhausted, he may seek leave to amend his complaint and re-allege those claims." (ECF No. 26, PageID.211). Plaintiff timely so moved, requesting to amend the complaint to reassert Count II, including the allegations about the JP5 player, and Defendant **did not oppose the motion.** Thus, consistent with Judge Kumar's ruling, I allowed the amendment, referencing her holding that Count II was now exhausted. (ECF No. 33.) Under the "law of the case" doctrine, rulings made at one point in the litigation become the law of the case for later stages of that same case. *United States v. Moored*, 38 F.3d 1419, 1421 (6th Cir.1994); *see also Arizona v. California*, 460 U.S. 605, 618 (1983). This ruling is now the law of the case, and Defendant cannot relitigate it now. *See Hayden v. Rhode Island*, 13 F. App'x 301, 302 (6th Cir. 2001) ("The law of the case dictates that issues, once decided, should be reopened only in extraordinary circumstances.") (citing

*Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988)).

Defendant's exhaustion argument should be rejected.

### D.  Qualified Immunity

Finally, Defendant argues that he is entitled to qualified immunity. Defendant sets forth two pages of general law on qualified immunity and then summarily contends that he is entitled to qualified immunity for the arguments "set forth above" because Plaintiff "has not demonstrated that [Defendant] has violated any clearly established constitutional right. (ECF No. 38, PageID.293.)  Contrary to Defendants' argument, Plaintiff does have a clearly established constitutional right to be free from retaliation for exercising his First Amendment right to file a grievance.  *See*, *e.g.*, *Bell v. Johnson*, 308 F.3d 594, 612 (6th Cir. 2002) ("[A] reasonable official would have been aware that, under the *Gibbs* and *Newsom* standard, conducting harassing cell searches and confiscating an inmate's legal papers and medical dietary supplements in retaliation for the inmate's exercise of his right of access to the courts would give rise to constitutional liability.").  The Court should reject Defendant's undeveloped qualified immunity argument.

### E.    Conclusion

For the reasons stated above, the Court should find that there is sufficient

evidence to create triable issues with respect to both Count I and Count II of the second amended complaint and the Court should **DENY IN PART** Defendant's motion for summary judgment (ECF No. 38).  The motion should be **GRANTED IN PART** in that the Court should find that Plaintiff cannot rely on this lawsuit to constitute "protected conduct" in relation to his claims, as Plaintiff has failed to produce admissible evidence that Defendant knew of the lawsuit in October 2020.

Plaintiff's motion to defer consideration of the motion for summary judgment (ECF No. 45) is **DENIED.**

## III.   PROCEDURE ON OBJECTIONS

### A.   Report and Recommendation

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule

72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc*.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc*.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

## B.    Order on motion to defer consideration

The attention of the parties is drawn to Fed. R. Civ. P. 72(a), which provides a period of fourteen (14) days after being served with a copy of this order within which to file objections for consideration by the district judge under 28 U.S.C. § 636(b)(1).

Dated:  January  31, 2024

Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE

40